UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NO. 08-264(3) (DWF/JSM) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| CONRADO MORALES-VAZQUEZ | |
| Defendant. | |

JANIE S. MAYERON, United States Magistrate Judge

The above matter came on before the undersigned upon defendant Conrado Morales-Vazquez's Motion to Suppress [Docket No. 32]. Thomas Hollenhorst, Assistant United States Attorney, appeared on behalf of the United States of America; Bruce Nestor, Esq. appeared on behalf of defendant Conrado Morales-Vazquez, who was personally present.

The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B). Based upon the pleadings, the pre-hearing submissions, exhibits submitted at the hearing on October 6, 2008, and testimony taken from Special Agent Terrance Olstad, Officer Luis Oliveira and defendant, it is recommended that Conrado Morales-Vazquez's Motion to Suppress [Docket No. 32] be **DENIED**.

I.   **FACTUAL BACKGROUND**

Special Agent Terrance Olstad ("SA Olstad"), with the Drug Enforcement Agency ("DEA"), Officer Luis Oliveira with the Airport Police, and defendant provided testimony

at the hearing.  SA Olstad testified that defendant was arrested in the evening of August 5, 2008.  SA Olstad stated he interviewed defendant at the Bloomington City Jail on August 6, 2008 with Special Agent Lora Zimmer of the DEA and Officer Luis Oliveira.  The interview was not recorded.  According to SA Olstad, the entire conversation and interrogation of defendant took place in Spanish.  SA Olstad indicated that he took a Spanish language course while he was employed with the Border Patrol, which was the equivalent of two-and-a-half years of college courses, and that he classified his present proficiency in Spanish as "functional" in a law enforcement environment.  Officer Oliveira testified that he grew up in Brazil speaking Portuguese, that he took four years of Spanish in high school and that he traveled briefly to Spain and Mexico.  He also stated that he used Spanish during interviews involving DUI suspects, implied consent hearings and in day-to-day conversations with individuals who passed through the airport from Spanish speaking countries.  Officer Oliveira was not a certified Spanish interpreter.

SA Olstad stated that he first introduced himself, SA Zimmer and Officer Oliveira to defendant.  SA Olstad then told defendant that the officers were there because of marijuana discovered in the trunk of an automobile and that they had already spoken to his nephew regarding this incident.  SA Olstad informed defendant that it was important to tell the truth, but that first he needed to be read his rights under Miranda.

SA Olstad testified that he read defendant his Miranda rights in Spanish from a DEA-13A card.  The form lists the Miranda rights in both English and in Spanish, and according to SA Olstad, the Spanish and Spanish versions are direct translations of each other.  See Government Ex. 1.  SA Olstad did not do anything to test defendant's

understanding, nor did he give defendant his rights in Spanish to read or have defendant sign anything regarding receiving his rights.  However, SA Olstad stated that defendant looked at him when he was being read his <u>Miranda</u> rights, appeared to understand his rights, did not ask for any clarification or repeating of the rights and did not appear to be confused.  In addition, SA Olstad testified that defendant did not appear to be under the influence of any drugs or alcohol.  SA Olstad characterized defendant's demeanor as cognizant of what was happening; at no time did defendant raise any issues of not being able to understand what was being said.  When SA Olstad finished reading defendant his <u>Miranda</u> rights, he asked defendant in Spanish if he understood his rights and if he was willing to talk to officers.  Defendant answered "yes" to both questions.  SA Olstad testified that he had no concern that defendant did not understand him.

After being read his rights, SA Olstad told defendant that if he was truthful he would try to help him but that he could not make any promises, as those decisions were up to the attorneys and the judge.  SA Olstad stated that he did not talk about the penalties that defendant was facing anytime to during his contact with defendant.  SA Olstad did not notify defendant of his right to contact the Mexican Consulate pursuant to Article 36 of the Vienna Convention on Consular Relations.  Defendant then gave an incriminatory statement to the law enforcement officers.

Officer Oliveira indicated that SA Olstad first introduced the officers and then proceeded to give defendant his rights.  In addition, Officer Oliveira stated that possible penalties were not discussed with defendant.

Defendant stated that the following chain of events that took place before the reading of his <u>Miranda</u> rights: the officers identified themselves; SA Olstad told defendant that he was in big trouble, saying that defendant could get 10 years in prison; and SA Olstad then told defendant that if he would cooperate with officers they could help him. Defendant also testified as follows: He is 46 years old; he is from Mexico and is an undocumented alien; he neither speaks nor writes English; he went through 9th grade in high school; he had never been arrested, interviewed by police, in jail or court before this incident; his family was in Mexico; he had never talked to a lawyer in his life and did not know how to contact a lawyer; and he had not slept for over 24 hours and had not eaten for at least 18 hours before his interview. He was held in a cell with no windows or natural light.

Defendant acknowledged that SA Olstad read him his rights off of a card, but stated that he only remembered a few lines of the <u>Miranda</u> warnings read to him. However, defendant also indicated that he understood the <u>Miranda</u> rights SA Olstad read in Spanish into the record during the motions hearing. Defendant remembered that he was told about having a lawyer but did not know how he could afford an attorney. Defendant stated that with regards to his right to remain silent, he believed that if he remained silent he would be in trouble and get ten years in jail.

Defendant testified that the officers never threatened him throughout the entire process. To the contrary, defendant stated that the officers were pleasant and polite and that he never felt that they were trying to trick him.

## II.     MOTIONS TO SUPPRESS STATEMENT

Defendant argued that his August 6, 2006 statement should be suppressed because his Miranda waiver was neither voluntary nor knowing and intelligent. Specifically, defendant's argument consisted of three principal contentions. First, defendant claimed that the Government failed to show that the Miranda warning was read to him in Spanish because the certified interpreter present at the motions hearing did not (and was not asked to) interpret the Spanish version of the Miranda warning in Exhibit 1, either as written or as read by SA Olstad. Defendant's Post-Hearing Memorandum in Support of Motion to Suppress ("Def.'s Mem.") at p. 5 [Docket No. 47]. Second, defendant argued that his background precluded a finding that his acknowledgement of the rights read to him could have constituted a "knowing and intelligent" waiver of his Miranda rights. Id. at pp. 5-6. Third, defendant asserted that he was subjected to psychological coercion by the threat of a ten-year prison sentence and the promise of SA Olstad that "if you help me, I'll help you", thereby making the waiver of his rights involuntary. Id. at pp. 6-7.

Miranda v. Arizona requires that an individual be advised of his right to be free from compulsory self-incrimination and the right to the assistance of an attorney anytime the individual is taken into custody for questioning. Miranda v. Arizona, 384 U.S. 436, 444 (1966); see also United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990). Therefore, the protections afforded by Miranda are triggered when an individual "is both in custody and being interrogated." United States v. Hatten, 68 F.3d 257, 261 (8th Cir. 1995) (citing United States v. Lawrence, 952 F.2d 1034, 1036 (8th Cir. 1992)).

As a preliminary matter, the Court notes that there is no dispute that defendant was in custody at the time the statements were made, and that he was therefore entitled to a reading of his Miranda rights.  Thus, the only issue that remains for determination is whether defendant validly waived those rights.  A waiver of Miranda rights is valid if it satisfies the following criteria:  "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.  Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."  United States v. Turner, 157 F.3d 552, 555 (8th Cir. 1998) (citing United States v. Jones, 23 F.3d 1307, 1313 (8th Cir. 1994)).  "The determination of whether an accused has knowingly and voluntarily waived his Miranda rights depends on all the facts of each particular case."  Stumes v. Solem, 752 F.2d 317, 320 (8th Cir. 1985) (citing Fare v. Michael C., 442 U.S. 707, 724-25 (1979)).  Only if the "'totality of the circumstances surrounding the interrogation'" reveals both an uncoerced choice and the requisite level of comprehension may this Court properly conclude that the defendant's Miranda rights have been waived.  See Moran v. Burbine, 475 U.S. 412, 421 (1986) (quoting Fare, 442 U.S. at 725).

This Court rejects defendant's contention that the Government failed to carry its burden of establishing that the Miranda warning read to him in Spanish adequately conveyed the substance and nature of the rights he was being asked to waive.  While the certified interpreter present at the motions hearing did not interpret the Spanish version of the Miranda warning in the DEA Form 13-A card (Government Ex. 1) to confirm in English what the form said, courts have recognized that the DEA Form 13-A

6

provides the Miranda warning in Spanish. See e.g., United States v. Labrada-Bustamante, 428 F.3d 1252, 1257 n. 3 (9th Cir. 2005) ("A DEA Form 13A states the Miranda warnings in both English and Spanish."); United States v. Valencia-Aguilar, No. CR 07-1172-2-TUC-RCC, 2007 WL 4468719 at *2-4 (D. Ariz. Dec. 14, 2007) (translating the Miranda warnings in DEA Form 13A from Spanish to English). Additionally, as defendant acknowledged in his post-hearing brief, SA Olstad testified that the English and Spanish versions were the same (see Def.'s Mem. at p. 3), and defendant offered no evidence to the contrary.

Defendant further contends that the Government did not met its burden of establishing a "knowing and intelligent" waiver by him of his Miranda rights given that: (1) he speaks no English; (2) has a limited education; (3) has no prior experience with the criminal justice system in the United States; (4) was an undocumented alien making him more vulnerable; (5) was isolated from his family; (6) had never talked to a lawyer in his life and did not know how to contact a lawyer; (7) had not slept for over 24 hours and had not eaten for at least 18 hours before his interview; and (8) was held in isolation. See Def.'s Mem. at pp. 5-6. According to defendant, the "talismanic" reading of rights from a card, in poorly accented Spanish, followed by a simple "yes" does not support findings that defendant was aware of the "nature of the right being abandoned" or that it was a "deliberate choice," given his situation. Id. at p. 6.

Whether an individual knowingly and intelligently waived his rights depends on the totality of the circumstances in a case, including the background, experience, and conduct of the defendant; the defendant's age; familiarity with the criminal justice system; and his demeanor and conduct during the interrogation. See Edwards v.

7

Arizona, 451 U.S. 477, 482 (1981) (string citation omitted). Here, defendant acknowledged that SA Olstad read him his rights off of a card, and testified that he understood the Miranda rights SA Olstad read in Spanish into the record during the motions hearing, which were the same rights read to him prior to the interview. SA Olstad stated that defendant looked at him when he was being read his Miranda rights, appeared to understand his rights, did not ask for any clarification or repeating of the rights, and did not appear to be confused. When SA Olstad finished reading defendant his Miranda rights, he asked defendant in Spanish if he understood his rights and if he was willing to talk to officers, and defendant answered "yes" to both questions. At no time did defendant raise any issues of not being able to understand what was being said. Moreover, any confusion by defendant about the availability of an attorney was addressed by the Miranda warning given to him in Spanish, including that:

> - You have the right to talk to a lawyer for advice before we ask you any questions and to have a lawyer with you during questioning.
>
> - If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

See Government Ex. 1.

Based on the totality of the circumstances, this Court concludes that defendant's waiver of his Miranda rights was knowing and intelligent.

As to defendant's argument that his waiver of his Miranda rights was not voluntary because he was subjected to psychological coercion by the threat of a ten-year prison sentence and the promise of SA Olstad that "if you help me, I'll help you," (Def.'s Mem. at pp. 6-7), SA Olstad and Officer Oliveira both testified that no mention

8

was made during the interview regarding a possible prison sentence. However, even accepting defendant's version of the facts, '"[a] truthful and noncoercive statement of the possible penalties which an accused faces may be given to the accused without overbearing one's free will. . . ."' Simmons v. Bowersox, 235 F.3d 1124, 1133 (8th Cir. 2001) (quoting United States v. Ballard, 586 F.2d 1060, 1063 (5th Cir. 1978)); see also United States v. Gallardo-Marquez, 253 F.3d 1121, 1123 (8th Cir. 2001) (upholding statements as voluntary because the conduct of the police officers was not calculated to overbear defendant's will where the officers told defendant he would receive a life sentence when the sentence was for 32 years). This Court does not find that an alleged statement by SA Olstad about the prison time that defendant might face rendered defendant's waiver of his Miranda rights involuntary.

Finally, as to defendant's assertion that SA Olstad's promise of leniency rendered his Miranda waiver involuntary SA Olstad testified that after being read his rights, he told defendant that if he was truthful he would try to help him, but that he could not make any promises, as those decisions were up to the attorneys and the judge. SA Olstad made no promises to defendant that if he talked, he would receive leniency. To the contrary, the record shows that SA Olstad told defendant the opposite and that it would be up to the charging attorney and the judge to provide any leniency. Any mistaken belief of promised leniency on behalf of defendant does not render his Miranda waiver involuntary. See States v. LeBrun, 363 F.3d 715, 725 (8th Cir. 2004) (citations omitted) (finding that a mistaken belief of promised leniency would not render confession involuntary).

In summary, the Court finds that defendant's <u>Miranda</u> rights were validly waived. Therefore, defendant's motion to suppress statements should be denied.[1]

### **RECOMMENDATION**

For the reasons set forth above, it is recommended that: Conrado Morales-Vazquez's Motion to Suppress [Docket No. 32] be **DENIED**.

Dated:      October 20, 2008

                                                              s/ *Janie S. Mayeron*
                                                              JANIE S. MAYERON
                                                              United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **October 30, 2008**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **October 30, 2008**.

---

[1] Defendant submitted in his pre-hearing papers that law enforcement officers did not inform him at anytime prior to his interview that he had the right to notify the Mexican Consulate pursuant to Article 36 of the Vienna Convention on Consular Relations and that this has a bearing on whether he voluntarily waived his <u>Miranda</u> rights. <u>See</u> Reply to Response of the United States Re: Motion to Suppress at pp. 2-3 [Docket No. 40]. Defendant did not address this issue in his post-hearing memorandum, and thus, this Court assumes that he is no longer pressing this argument.  In any event, the Court notes that suppression is not an appropriate remedy for violating the Vienna Convention on Consular Relations.  <u>See</u> <u>Sanchez-Llamas v. Oregon</u>, 548 U.S 331, 343-44 (2006) <u>United States v. Ortiz</u>, 315 F.3d 873, 886 (8th Cir. 2002).